UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FIFTH DIVISION

--------------------------------------------------

Case No. 06 CV 293 JRT/RLE

David Riehm and Colleen Riehm,

               Plaintiffs,

v.

**COOK COUNTY DEFENDANTS'
MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR DISMISSAL OR IN THE
ALTERNATIVE SUMMARY JUDGMENT**

John Engelking, in his individual capacity as
Middle and High School Principal of Cook
County Public Schools, Independent School
District Number 166, Ann Mershon, in her
individual capacity and her official capacity
as a public school teacher employed by
Independent School District Number 166,
Independent School District Number 166,
a political subdivision of the State of Minnesota,
Steven Diercks, in his individual capacity and
his official capacity as a social worker employed
by the Department of Public Health and Social Services
of Cook County, Minnesota, Ann DeBevec, in her
individual capacity and her official capacity as a social
worker employed by the Department of Public Health
and Social Services of Cook County, Minnesota, and
who supervises Mr. Steven Diercks, Deputy Joseph Zallar,
in his individual capacity and his official capacity
as a deputy sheriff employed by Cook County, Minnesota,
Minnesota State Patrol Officer "A", in his individual
capacity and his official capacity as a Minnesota
State Patrol Officer assigned to the Northeast Division,
and Cook County, a political subdivision of the
State of Minnesota,

               Defendants.

---------------------------------------------------------------------------------

## **INTRODUCTION**

This case stems from a protective hold placed on David Riehm pursuant to a valid Court Order for emergency placement for a psychological evaluation.  Cook County filed a CHIPs Petition and request for emergency placement for a psychological evaluation following receipt of threatening papers authored by David Riehm.  Plaintiffs filed a lawsuit against Cook County and the School District stemming from the procedures taken by these entities in response to David Riehm's threats.

Cook County, Steven Diercks, Ann DeBevec and Joseph Zallar submit this Memorandum in support of their Motion to Dismiss or in the alternative summary judgment.  The County Defendants adopt by reference all arguments set forth in the School District's Memorandum of Law in support of its dismissal motion and will not repeat the same.

## **STATEMENT OF UNDISPUTED FACTS**

In January 2005, David Riehm was a seventeen year old high school senior enrolled in Ann Mershon's creative writing class at Cook County High School, Independent School District Number 166. *Pls.' Compl.  ¶¶5, 45.* Mr. Riehm authored three writing assignments, the first being a sexually explicit writing entitled, "Poor John Redfield." *Attached to Pls.' Compl. Ex 3 and 5.* Ms. Mershon indicated on this writing, "I am offended by this piece.  If this needs to be your subject matter, you're going to have to find another teacher.  I'm actually a little concerned about your obsessive focus on sex and potty language.  Make a change – today!" *See Pls.' Compl. Ex. 3.* Ms. Mershon also

spoke to Mr. Riehm about this writing and encouraged him to change the focus of his writing for class. *Ms. Mershon's statement attached to Pls.' Compl. Ex. 3.*

Mr. Riehm's second writing, "View Number One and View Number Two," expressed his desire to write about sexual topics and violence. He wrote the rejection by Ms. Mershon greatly upset him because he felt his creative talents were being hindered. Mr. Riehm wrote about the dynamics between a teacher he disparagingly and offensively named "Mrs. Cuntchensen," and a student, and how the teacher was offended by the topics he wrote. *Attached to Pls.' Compl. Ex 3 and 5.*

Ms. Mershon spoke to David Riehm's mother, Colleen Riehm, at conferences about David's inappropriate choices. *Ms. Mershon's statement attached to Pls.' Compl. Ex. 3.* David Riehm wrote a number of more appropriate pieces throughout the semester, however, a final assignment for the class was a compilation of each student's best writing into a book. *Ms. Mershon's statement attached to Pls.' Compl. Ex. 3.* In David Riehm's compilation, was a writing entitled, "Bowling for Cuntchenson." *Id., writing attached to Pls.' Compl. Ex 3 and 5.* The main character is an English teacher named, "Mrs. Cuntchenson." He ended the "story" shooting the teacher in a fit of rage after writing about the church, finding a gun in church and how it was his destiny, or directive from God, he must kill the teacher. He wrote:

> My eyes focused on a repulsive object, Mrs. Cuntchenson. Seeing the wide eyed look horror in her face brought a sick smirk to my face only before seen on the devil's. I had the I squeezed the trigger and I my heart lifted briefly only to be yanked back down to reality. [sic]

> I winced at the shot, but she winced more as the bullet replaced her left eye. In an instant a red mist was produced from the wound, followed by a stead

3

[sic] flow of blood, tissue, and bone fragments.  I felt the warm mist speckle onto my face.  The splatter distance was incredible.

*Attached to Pls.' Compl. Ex 3 and 5.*    After killing the teacher, Riehm wrote about

committing suicide:

> I raised the gun up, and tightened my index finger around the trigger.  I swallowed hard, and held my breath.  I ask myself.  What were the last thoughts through my head?  Well I guess it was all worth it.  It was totally worth it.

> The bullet exited the barrel and moved slowly toward my head, then, as if the world had been fast forwarded, it jolted toward my head, I didn't move out of the way.  I didn't want to.  Everything fades to black.

*Attached to Pls.' Compl. Ex 3 and 5.*    After, reading "Bowling for Cuntchenson," Ms.

Mershon became very concerned for her safety, believing the story was a threatening

personal attack:

> I felt threatened and violated by his thinly-veiled fictional account of revenge against me.  I immediately had anxieties, which I have struggled with since reading the story.  It scared me, it hurt me, and it also makes me very concerned for David.  I don't see this as a normal reaction to being asked to limit subject matter for creative writing.

*Ms. Mershon's statement attached to Pls.' Compl. Ex. 3.*  Ms. Mershon reported her

concerns to her principal, Mr. Engelking who ultimately suspended David Riehm.  *Pls.'*

*Compl.* ¶ 41.  Principal Engelking also contacted the Cook County Sheriff's Department

and Deputy Joseph Zallar met with Mr. Engelking and Ms. Mershon, wrote a report and

sent a copy of the report and Mr. Riehm's writings to the County Attorney and Social

Services for review.  *Offense/Incident Report attached to Pls.' Compl. Ex. 4.*  Social

Services created a children's welfare case based on Mr. Riehm's "thinly veiled" story of

murder and suicide.  *See Intake Summary attached to Pls.' Compl. Ex. 3.*  Child

Protective Services and the Cook County Attorney's Office also believed David Riehm was exhibiting behaviors potentially dangerous to himself and others.  On January 25, 2005, Assistant County Attorney Boese presented District Court Judge Kenneth Sandvik with a CHIP Petition and request for emergency placement for a psychological evaluation.  *See Petition for Ex Parte Emergency Protective Care and Petition Child in Need of Protection attached to Pls.' Compl. Ex. 3.*  Judge Sandvik signed the Order on January 25, 2005.  *Ex Parte Order for Emergency Protective Care attached to Pls.' Compl. Ex. 4.*

That same day, Social Worker Steven Diercks and Deputy Joe Zallar placed Mr. Riehm in protective custody pursuant to Court Order and transported him to Miller Dwan Hospital.  *Pls.' Compl.* ¶¶ 85-91.  No bed was available and he was transferred to the adult psychiatric unit at St. Luke's Hospital.  *Pls.' Compl.* ¶¶ 92-95.  A psychological evaluation was conducted on January 27, 2005 and the physician concluded Mr. Riehm was not mentally ill or dangerous.  *Pls.' Compl.* ¶¶ 97-99.  On January 28, 2005, a hearing was held to determine if any further action was needed.  Based on the evaluation, Cook County asked the Court to dismiss the CHIP Petition.  *Pls.' Compl.* ¶ 101,  *Order Granting Motion to Dismiss attached to Aff. Tindal as Ex. 1.*

## SUMMARY OF CLAIMS

Plaintiffs allege a litany of claims against Cook County Defendants.  The following is a summary of these claims:

1.      Violations of Title II of the ADA and MHRA by Cook County, Diercks and DeBevec.  *Pls.' Compl.* ¶ 109.

2.      Unreasonable seizure under the Fourth and Fourteenth Amendments U.S. Constitution and Minnesota Constitution by Diercks, DeBevec and Zallar. *Id.* at ¶¶ 110, 113.

3.      Abuse of Process for violation of Minn. Stat. § 260C by Diercks and DeBevec.  *Id.* at ¶ 111.

4.      Violation of Freedom of Speech under the First and Fourteenth Amendments of the U.S. Constitution and Minnesota Constitution.  *Id.* at ¶ 112.

5.      Common law false imprisonment and negligent confinement by Diercks, DeBevec and Zallar.  *Id.* at ¶ 113.

6.      Violation of Right to Familial Association under the Fourth and Fourteenth Amendments U.S. Constitution and Minnesota Constitution by Diercks and DeBevec.  *Id.* at ¶ 115.

7.      Violation of the Minnesota Patient Bill of Rights, Minn. Stat.  144.651 by Cook County, Diercks and DeBevec.  *Id.* at ¶¶ 109, 110.

## STANDARD OF REVIEW

In considering a Motion to Dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, the Court accepts as true, in a hypothetical sense, all of the factual allegations in a light most favorable to the nonmoving party.  *See Riley v. St. Louis County of Mo.,* 153 F.3d 627, 630 (8th Cir. 1998), *cert. denied*, 525 U.S. 1178 (1999); *Anderson v. Franklin County, Mo.,* 192 F.3d 1125, 1131 (8th Cir. 1999).  A Motion to Dismiss, for failing to state a claim, should be granted if it is beyond doubt that no relief could be granted, under any set of facts, when the allegations are construed in a light most favorable to the pleader.  *Hartford Fire Ins. Co. v. Cal.*, 509 U.S. 764, 811 (1974); *County of St. Charles v. Mo. Fam. Health Council,* 107 F.3d 682, 684 (8th Cir. 1997), *cert. denied*, 522 U.S. 859 (1997).

The Court, however, need not accept as true, wholly conclusory allegations, or unwarranted factual inferences. *See Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999).  Moreover, in treating the factual allegations of a Complaint as true, the Court need not "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

When matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.  Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

## I.   PLAINTIFFS HAVE SUSTAINED NO CONSTITUTIONAL VIOLATION.

### A.   Plaintiffs' claims are barred by the doctrine of *Rooker-Feldman*,

The Supreme Court has confined application of the *Rooker-Feldman* doctrine to "cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.,* 544 U.S. 280, 284 (2005). The basis for the *Rooker-Feldman* doctrine is, other than in the context of habeas claims, federal district courts are courts of original jurisdiction, and by statute they are precluded from serving as appellate courts to review state court judgments. *Dornheim v. Sholes,* 430 F.3d 919, 923 (8th Cir. 2005) (finding no preclusion under the *Rooker-Feldman* doctrine where the appeal period had not expired for the juvenile disposition order and divorce order in state court proceeding). "Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues… are inextricably intertwined." *Gisslen v. City of Crystal, Minn.,* 345 F.3d 624, 627 (8th Cir. 2003) (citations omitted).

In *Liedel v. Juv. Ct. of Madison County,* 891 F.2d 1542, 1542 (11th Cir. 1990), a child's mother and mother's husband brought a civil rights action claiming their federal constitutional rights were violated as a result of state court child abuse proceedings. The Eleventh Circuit found the federal court lacked jurisdiction because the claim essentially challenged a state court judgment. *Id.* at 1546.

In *Ely v. Hill*, 35 Fed.Appx. 761, 763 (10th Cir. 2002), plaintiff brought a federal claim based on a protective order issued in state court. The Plaintiff challenged the procedures surrounding the protective order. The Tenth Circuit found it did not have jurisdiction over the claims because it would be forced to examine "the factual and procedural correctness of the state court judgment." *Id.*; *see also Sherkat v. Vano*, 76 Fed.Appx. 242, 243 (10th Cir. 2002) (finding the *Rooker-Feldman* doctrine barred review of claims for injunctive relief and monetary damages stemming from a protective order in state court.)

Here, Plaintiffs are challenging the procedures surrounding the state Court Order for Emergency Protective Care. Plaintiffs claim the petition requesting the Order for Protection was not sufficient. *See Pls.' Compl.* (alleging repeatedly the petition was based on false statements and omissions of fact and unsworn.) The state court judge reviewed the petition and issued an order. Because Plaintiffs are challenging a state court order, their claims are barred by the *Rooker-Feldman* doctrine.

### B.       No Unreasonable Seizure.

Plaintiffs allege unreasonable seizure by Cook County officials Diercks, DeBevec and Zallar under the Fourth and Fourteenth Amendment. *Pls.' Compl.* ¶¶ 110, 113.

### 1.       Fourteenth Amendment.

The Fourteenth Amendment provides that no state shall deprive any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. It is difficult to ascertain whether Plaintiffs are alleging a violation of substantive or procedural due process because their complaint only refers to a Fourteenth Amendment

9

violation.  However, Plaintiffs' claims cannot succeed on either a substantive or

procedural due process argument.

### a.    Substantive Due Process

To the extent Plaintiffs are alleging a substantive due process violation, their claim

fails because the government's interest outweighs Plaintiffs' interest.

The substantive component of the due process clause "bar[s] certain government

actions regardless of the fairness of the procedures used to implement them . . . [and

thereby] serves to prevent government power from being used for the purposes of

oppression." *Daniels v. Williams,* 474 U.S. 327, 331 (1986).  In determining whether a

substantive right protected by the due process clause has been violated, it is necessary to

balance "the liberty of the individual" and "the demands of an organized society."

*Youngberg v. Romeo,* 457 U.S. 307, 320 (1982).  In seeking this balance, the Court must

weigh "the individual's interest in liberty against the State's asserted reasons for

restraining individual liberty."  *Id.*

Courts have long recognized parents have a liberty interest in familial

relationships.  *See Abdouch v. Burger,* 426 F.3d 982, 987 (8th Cir. 2005).  However, the

right to family integrity is not absolute.  "[T]he state has a strong interest in protecting the

safety and welfare of minor children."  *Dornheim v. Sholes*, 430 F.3d 919, 925-26 (8th

Cir. 2005) (affirming qualified immunity for actions taken in child abuse investigation)

(citing *Manzano v. S.D. Dep't of Soc. Servs.,* 60 F.3d 505, 510 (8th Cir.1995)).  Courts

balance the interests of the state and the children against the interests of the parent in

determining whether a constitutional violation has occurred.  *Id.*  The emergency removal

of a child is not limited to child abuse instances. *K.D. v. County of Crow Wing,* 434 F.3d

1051, 1056 (8th Cir. 2006).

In *LaVine v. Blaine Sch. Dist.*, 257 F.3d 981, 983 (9th Cir. 2000), the Ninth Circuit

refused to hold the school district liable for taking preemptory actions (expulsion) when

an eleventh grade student submitted a graphic poem to a teacher depicting the violent

murder of 28 classmates and then his own suicide.  The court stated:

> Given the knowledge the shootings at Columbine, Thurston and Santee
> high schools, among others, have imparted about the potential for school
> violence (as rare as these incidents may be when taken in context), we must
> take care when evaluating a student's First Amendment right of free
> expression against school officials' need to provide a safe school
> environment not to overact in favor of either.  Schools must be safe, but
> they are educational institutions after all, and speech-including creative
> writing and poetry-is an essential part of the educational fabric.  Although
> this is a close case in retrospect, we conclude that when the school officials
> expelled James LaVine they acted with sufficient justification and within
> constitutional limits, not to punish James for the content of his poem, but to
> avert perceived potential harm.

*Id.*

The Sixth Circuit held school and law enforcement officials were not civilly liable

for the detention/arrest of two students making verbal threats of staging a mass

Columbine-like shooting.  *Williams v. Cambridge Bd. of Ed.*, 370 F.3d 630, 631-32 (6th

Cir. 2004); s*ee also Doe v. Pulaski County Spec. Sch. Dist.,* 306 F. 3d 616, 619 (8th Cir.

2002) (finding school district was not civilly liable for expulsion of eighth grade student

for writing a threatening letter regarding an ex-girlfriend).

"Before official conduct or inaction rises to the level of a substantive due process

violation it must be so egregious or outrageous that it is conscience-shocking."  *Burton v.*

*Rishmond,* 370 F.3d 723, 728 (8th Cir. 2004) (finding defendant's failure to investigate a single complaint of sexual abuse was not so outrageous or egregious as to shock the conscience). "It cannot seriously be disputed that the state seeks to further a legitimate state interest when it sets out to protect the welfare of its citizens of tender age." *In re Scott County Master Docket,* 672 F. Supp. 1152, 1165 (D. Minn. 1987) (citation omitted). "[T]he state has the 'right' and the 'duty' to protect minor children." *Stanley v. Illinois,* 405 U.S. 645, 649 (1972).

Here, there is no action which rises to the level of "conscience-shocking." Unfortunately, there have been several school shootings in recent years and litigation stemming from these tragedies. Victims of these shootings have brought civil actions for failure to prevent these tragedies. For example, there are numerous civil cases stemming from the Columbine school shootings. *See Rohrbough v. Stone*, 189 F.Supp.2d 1088 (D. Colo. 2001) (Survivors of students who were shot and killed in school brought § 1983 and wrongful death actions against sheriff, sheriff's department, board of commissioners, police officers, and deputy sheriffs); *Ruegsegger v. Jefferson County Sch. Dist. R-1*, 187 F.Supp.2d 1284 (D. Colo. 2001) (High school student who was shot and seriously injured in attack by other students brought action against the school district, principal, assistant principal, and other school officials, alleging willful and wanton conduct, and § 1983 violations); *Ruegsegger v. Jefferson County Board of County Commissioners,* 197 F. Supp. 2d 1247 (D. Col. 2001) (Student wounded in high school shooting, and parents and siblings of wounded student, brought action against sheriff, sheriff's deputies, sheriff's department, and county board, asserting § 1983 claims for deprivation of constitutional

right to life, liberty and personal security, and asserting state law claims for willful and wanton conduct and outrageous conduct); *Sanders v. Bd. of County Commrs. of Jefferson County*, 192 F.Supp.2d 1094 (D. Colo. 2001), (Personal representative of teacher who died in school massacre brought § 1983 action against various law enforcement officers and Board of County Commissioners alleging violation of teacher's substantive due process rights.)

Significantly, the action before this Court does not involve an actual school shooting, but actions to prevent a potential tragedy.  Cook County officials should not be held civilly liable where they acted based on credible information and a perceived threat. Certainly a lawsuit would be brought against county officials if they had knowledge of a student's documented homicidal and suicidal ideas and did nothing.  Here, County officials were motivated by concern for Plaintiff and others and these actions do not constitute an abuse of official power which shocks the conscience.  The government interest is to protect individuals and based upon the perceived threat, the government's interest outweighs Plaintiffs' interest.  Therefore, there is no substantive due process violation.

b. **No Procedural Due Process Violation**

To the extent Plaintiffs are alleging a procedural due process violation, their claim fails because David Riehm was placed in protective custody pursuant to a valid Court Order.[1]

The procedural protections guaranteed by the Fifth and Fourteenth Amendments "are triggered by the existence of a protectible liberty or property interest. Thus, the process that is due depends upon the nature of the interest at stake." *Bohn v. County of Dakota*, 772. F. 2d 1433, 1435 (8th Cir. 1985). Resolving such issues requires a two-step analysis. First, the Court must determine whether plaintiffs have identified a protectible interest. Second, the Court must "examine the established procedures to determine whether they satisfy constitutional standards." *Id.*

The Court looks to the procedural protections due under Minnesota Statute Section 260C. To assist in evaluating the propriety of these procedures, the Court must consider three factors:

> First, the private interest that will be affected by the initial action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burden that the additional or substitute procedural requirement would entail.

*Bohn,* 772 F. 2d at 1437 (citing *Mathews v. Eldridge,* 424 U.S. 319 (1976)).

---

[1] Plaintiffs allege a procedural due process claim against the School District Defendants, but it is unclear if Plaintiffs are also alleging a procedural due process claim against Cook County officials.

As discussed above, Ms. Riehm has a protectible liberty interest in the care, custody and management of her children.  The government also has a substantial interest in protecting the welfare of children.

Next, the Court considers the procedural safeguards.  Procedural due process fundamentally requires an aggrieved party be provided with an opportunity to be heard at a meaningful time and in a meaningful manner.  *Mathews,* 424 U.S. at 333.

> In some circumstances, post-deprivation remedies provided by state law and regulations may be sufficient to satisfy the strictures of procedural due process, notwithstanding that the deprivation of liberty or property took place without the benefit of notice and hearing.  In a child removal context, post-deprivation remedies may be particularly appropriate.

*In re Scott County Master Docket,* 672 F. Supp. at 1169-70.  "In general, when a child's safety is threatened, that is 'justification enough for action first and hearing afterward.'"  *Id.* at 1171 (citing *Lossman v. Pekarske,* 707 F. 2d 288, 290 (7th Cir. 1983)).

Minn. Stat. § 260C.007, subd. 6(9) defines a child in need of protective services means a child "whose behavior, condition, or environment is such as to be injurious or dangerous to the child or others."  David Riehm's writings clearly were intended to portray conflict and threats toward a teacher and an intent to kill that teacher and himself.  Based on these writings and based on the history of school shootings in Colorado, Kentucky, Oregon, Arkansas, Pennsylvania (and subsequently Minnesota), Cook County officials were objectively reasonable under Minn. Stat. § 260C.007 in seeking a Court Order for emergency protection.  After receiving an Order from the court for emergency

protection, the County officials acted pursuant to Minn. Stat. § 260C.175 in placing

David Riehm in protective custody for a medical evaluation.[2]

Plaintiffs will claim there was a violation of Minnesota Statute §260C for

allegedly making false statements in a petition and presenting an alleged unsworn

petition.  The law is clear, a violation of a state statute does not indicate a constitutional

violation.  *See Myers v. Morris,* 810 F. 2d 1437, 1469 (8th Cir. 1987) (noting a violation

of state law is neither cognizable under section 1983 nor results in forfeiture of immunity

for the alleged violations); *Ebmeier v. Stump,* 70 F. 3d 1012, 1013 (8th Cir. 1995)

(emphasizing violations of state law do not state a claim under section 1983).  Therefore,

even if Plaintiffs claim a violation under the procedures of this statute, there is no

constitutional violation.

There is no procedural due process violation.

## 2.    Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures."  *Bd. of*

*Educ. of Indep. Sch. Dist. No. 92 v. Earls*, 536 U.S. 822, 828 (2002) (internal quotations

omitted).  In deciding whether a situation implicates the Fourth Amendment, the court

must first determine whether a seizure occurred.  *U.S. v. Johnson,* 326 F. 3d 1018, 1021

(8th Cir. 2003).  If a seizure has occurred, courts "must then assess the reasonableness

---

[2] As indicated in *In Re Scott County Master Docket,* 672 F. Supp. at 1169-70, there are circumstances that justify placing a child in protective custody before any hearing.  Here, Cook County officials did not put David Riehm in immediate protective custody pursuant to Minn. Stat. § 260C.175, subd. 1(b) without a court order.  Cook County officials sought a Court Order prior to placing him in protective custody.

based on the circumstances of the particular search or seizure." *Ware v. Moe,* 2004 WL

848204 at *6 (D. Minn. April 19, 2004) (citing *Skinner v. Railway Labor Executives'*

*Ass'n,* 489 U.S. 602, 616-19 (1989)).

      The easy route for officials would have been to do nothing in response to David

Riehm's writings and Ms. Mershon's legitimately perceived threat.  However, Cook

County officials performed their job and obtained a Court Order for emergency

protection.  The state has a strong interest in protecting the safety and welfare of minor

children. *See Dornheim v. Sholes*, 430 F.3d 919, 925-26 (8th Cir. 2005).  A teacher, a

principal, social workers, deputy and District Court Judge all agreed an Order for

emergency protection was the best way to handle this situation.  No reasonable social

worker or deputy placed in this same situation would have ignored the potential for a

school shooting.

      Here, there was no unreasonable seizure because Cook County officials obtained a

Court Order for emergency protection and executed that Order.  The Order was sought

based on a legitimate perceived threat.  Plaintiffs cannot argue the First Amendment right

to freedom of speech protects David Riehm from being placed in protective custody and

implicates a Fourth Amendment claim.  While the First Amendment protects speech, it is

not an absolute protection, especially in a school setting. *See Hazelwood Sch. Dist. v.*

*Kuhlmeier,* 484 U.S. 260, 266 (1988).  David Riehm alleges his writing was simply an

"assignment which described a dream within the dream within the event which did not

take place described a student who was hurt by the response of his creative writing

teacher to his assignment." *Pls.' Compl.* ¶ 52.  However, it would not be reasonable for

Cook County officials to do nothing in response to this writing and threat to Ms. Mershon under the guise that it was simply a creative writing assignment about a student hurt by his teacher's response to his past assignment. Cook County officials acted reasonably in this situation and there is no Fourth Amendment violation.

### C.      No Violation of Freedom of Speech.

Plaintiffs claim Cook County Defendants Diercks and DeBevec violated David Riehm's First Amendment Rights. *Pls.' Compl.* ¶ 111.

"The courts have construed the First Amendment as applied to public schools in a manner that attempts to strike a balance between the free speech rights of students and the special need to maintain a safe, secure and effective learning environment." *Harper v. Poway Unified Sch. Dist.,* 445 F.3d 1166, 1176 (9th Cir. 2006). "States have a compelling interest in their educational system, and a balance must be met between the First Amendment rights of students and preservation of the educational process." *LaVine,* 257 F.3d at 988. The Supreme Court has declared that "the First Amendment rights of students in public schools are not automatically coextensive with the rights of adults in other settings, and must be applied in light of the special characteristics of the school environment." *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 266 (1988) (citations omitted).

"A school need not tolerate student speech that is inconsistent with its 'basic educational mission,' even though the government could not censor similar speech outside the school." *Hazelwood,* 484 U.S. at 266. Therefore, school officials may suppress speech that is vulgar, lewd, obscene, or plainly offensive without a showing that

such speech occurred during a school-sponsored event or threatened to "substantially

interfere with [the school's] work." *Tinker v. Des Moines Indep. Community. Sch. Dist.,*

393 U.S. 503, 509 (1969).  Such language, by definition, may well "impinge[ ] upon the

rights of other students," *id.,* and therefore its suppression is "reasonably related to

legitimate pedagogical concerns." *Chandler v. McMinnville Sch. Dist.,* 978 F.2d 524,

529 (9th Cir. 1992) (citing *Hazelwood,* 484 U.S. at 272-73); *see also Bethel School Dist.*

*No. 403 v. Fraser,* 478 U.S. 675, 685 (1986) (holding school district acted within its

permissible authority in imposing sanctions upon student in response to offensively lewd

and indecent speech).

The Supreme Court has identified "three distinct areas of student speech," each of

which is governed by different Supreme Court precedent: (1) vulgar, lewd, obscene, and

plainly offensive speech which is governed by *Fraser,* (2) school-sponsored speech

which is governed by *Hazelwood,* and (3) all other speech which is governed by *Tinker.*

*See Harper,* 445 F. 3d at 1176-77 (citing *Chandler,* 978 F.2d at 529).

Cook County was not involved in the school's decision to suspend David Riehm.

The County adopts all of the arguments set forth in the School District's Memorandum of

Law in support of its dismissal motion; to the extent a plausible claim is asserted.  Cook

County became involved in a potential criminal and subsequent CHIPs investigation.

The County need not wait until actual harm occurs before acting.

### D.    No Violation of Familial Association.

Plaintiffs claim Cook County Officials Diercks and DeBevec violated their rights

to familial association.  *Pls.' Compl.* ¶ 115.

19

Courts have not recognized a violation of the right to familial association by wrongful prosecution or incarceration of a family member. *See Reasonover v. St. Louis County, Mo.*, 2006 WL 1211143 at \*11 (8th Cir. May 8, 2006). "A defendant can be held liable for violating a right of intimate association only if the plaintiff shows an intent to interfere with the relationship." *Singleton v. Cecil,* 133 F.3d 631, 635 (8th Cir. 1998); *see Singleton v. Cecil,* 176 F.3d 419, 423 (8th Cir. 1999) (affirming no violation of right to intimate association for reasons cited in *Singleton*, 133 F. 3d at 634-35).

Here, even if this Court could find a valid right to familial association claim, Plaintiffs' claim fails because there is no evidence Cook County officials intended to interfere with the family relationship. Clearly, their intent was to protect David Riehm, Ms. Mershon and other students. Therefore, there is no violation of familial association.

## E.      No Violation of ADA.

Plaintiffs allege Cook County and Mr. Diercks and Ms. DeBevec violated Title II of the ADA and the MHRA. *Pls.' Compl.* ¶ 109.[3] "[T]he MHRA parallels the federal statutes, and the state and federal claims will be analyzed together." *Henderson v. Ford Motor Co.,* 403 F.3d 1026, 1032 (8th Cir. 2005).

---

[3] Plaintiffs also allege claims under the Minnesota Patient Bill of Rights, Minn. Stat. 144.651. *Pls.' Compl.* ¶¶ 109, 110. A private cause of action does not exist under the Patient Bill of Rights. *J.T.P. v. St. Paul Ramsey Med. Ctr.,* 1997 WL 65511 at \*\*2-3 (Minn. App. Feb. 18, 1997) (indicating Minn. Stat. 144.561, subd. 20 sets forth a grievance procedure for alleged violations of the statute and gives the state commissioner of health exclusive authority for enforcement of the statute). Additionally, Cook County officials were not involved in any treatment of David Riehm at a health care facility and this statute does not apply to them. These alleged claims must be dismissed as a matter of law.

Under the ADA, disability is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Costello v. Mitchell Pub. Sch. Dist. 79,* 266 F.3d 916, 923 (8th Cir. 2001) (citing 42 U.S.C. § 12102(2)). An impairment is "substantially limiting" if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population. Major life activities include learning. *Id.* (citing 29 C.F.R. § 1630.2(j)(1)(i)-(ii) (2001)).

Plaintiffs' Complaint does not explain this claim but simply states a violation of "David Riehm's right to be free from being falsely regarded as a mentally ill individual requiring emergency seizures and detention." *Pls.' Compl.* ¶ 109. Cook County officials did not label Mr. Riehm mentally ill. They sought a Court Order for emergency protective care. Nowhere in the petition does it state or imply Mr. Riehm was mentally ill. Seeking a mental evaluation presupposes Cook County did not know whether Mr. Riehm has a mental impairment and therefore did not label him as mentally ill.

Additionally, there is no violation of the ADA for seeking a mental evaluation. *See Cody v. CIGNA Healthcare of St. Louis, Inc.,* 139 F.3d 595, 599 (8th Cir. 1998) (A request for an evaluation is not equivalent to treatment of the employee as though she were substantially impaired. Knowledge of behavior that could be associated with an impairment does not show treatment as if plaintiff was disabled.)

Accordingly, Plaintiffs' MHRA claims and ADA claims fail as a matter of law.

## II.   PLAINTIFFS FAILED TO ARTICULATE AN INDIVIDUAL CAPACITY CLAIM AGAINST ANN DEBEVEC.

Plaintiffs have not alleged Ann DeBevec was individually involved in any way in the events in question.  Plaintiffs only indicate Ms. DeBevec supervised Mr. Diercks. *Pls.' Compl.* ¶ 69.  Because Plaintiffs have not specified any action(s) by Ms. DeBevec in her individual capacity, the claims are simply veiled respondeat superior claims or official capacity claims and should be dismissed.  An official capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690, 98 S.Ct. 2018; *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  In other words, an official capacity suit is merely a suit against the governmental entity and damages are recoverable only if they would be recoverable from the entity. For reasons set forth in arguments below, those claims fail and all claims against Ms. DeBevec should be dismissed as a matter of law.

## III.   THE INDIVIDUAL DEFENDANTS ARE PROTECTED BY QUALIFIED IMMUNITY.

Qualified immunity questions should be resolved at the earliest possible stage to shield officers from disruptive effects of broad ranging discovery and effects of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987).  Qualified immunity is an affirmative defense available to public officials sued for damages under 42 U.S.C. § 1983.  *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).  Immunity is a purely legal question conceptually distinct from a defense to the merits of plaintiff's claim.  *Mitchell v. Forsythe*, 472 U.S. 511, 530 (1985).  "Officials are not liable for bad guesses in gray

areas; they are liable for transgressing bright lines." *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005) (quoting *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004)).

The qualified immunity analysis requires a three-pronged inquiry. First, the plaintiff must establish a violation of a constitutional right. *Id.* If a constitutional right is not asserted, the matter must be dismissed. *See Cross v. City of Des Moines,* 965 F.2d 629, 632 (8th Cir. 1992). Second, the court's inquiry then proceeds to the question of whether the constitutional right in question was "clearly established" at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). And finally, the court evaluates "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Saucier,* 533 U.S. at 201.

## A.  No Violation of a Constitutional Right.

In order to conclude the officials violated a clearly established constitutional right, the Court must first determine whether Plaintiff has asserted a violation of a constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). "In cases where the rights of the parent are balanced against the state's interest in protecting the child, the qualified immunity defense is difficult to overcome." *K.D.,* 434 F.3d at 1055 (affirming qualified immunity for protective hold on child without a court order).

As argued above, there is no constitutional violation. Therefore, Diercks, DeBevec and Zallar are entitled to qualified immunity.

23

**B.  No Violation of a "Clearly Established" Constitutional Right.**

To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Turner v. Arkansas Ins. Dept.,* 297 F.3d 751, 755 (8th Cir. 2002) (citing *Anderson,* 483 U.S. at 635).  It is Plaintiffs' burden to show the asserted right was clearly established. *Davis v. Scherer,* 468 U.S. 183, 197 (1984); *Thomason v. SCAN Vol. Serv., Inc.,* 85 F. 3d 1365, 1371 (8th Cir. 1996) (establishing the law requires a balancing test in the removal of children from their parents, "the requirement that the right be clearly established at the time of the alleged violation is particularly formidable").

Here, there is no evidence in the record to demonstrate Cook County officials believed their actions were improper.  As a result, Plaintiffs have failed to demonstrate the right was clearly established so as to defeat the application of qualified immunity.  At a minimum, no case supports the proposition that potential threats in a school setting should not be investigated.

**C.    Individual Defendants' Actions were Objectively Reasonable.**

If this Court finds Defendants have demonstrated the officials' actions constitute a violation of a "clearly established right," the Court must also evaluate, "whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard for the underlying intent or motivation." *Guite v. Wright,* 147 F.3d 747, 750 (8th Cir. 1998) (citing *Graham,* 490 U.S. at 397).  In *Malley v. Briggs,* 475 U.S. 335, 343 (1986), the Supreme Court explained:

> [Police officers] will not be immune if, on an objective basis, it is obvious
> that no reasonably competent officer would have [acted similarly] . . . but if
> officers of reasonable competence can disagree on this issue, immunity
> should be recognized.

"[T]he reasonableness inquiry extends only to those facts known to the officer at the

precise moment the officers effectuate the seizure." *Lacy v. City of Bolivar, Missouri*,

2005 WL 1802478 at *4 (8th Cir. Aug. 2, 2005) (citation omitted) (finding the officers

were objectionably reasonable in their belief Mr. Lacy was an imminent threat to himself

and placing him on a protective hold). In this case, officials and a Judge reasonably

believed it was appropriate to execute a Court Order for emergency protection to have

David Riehm evaluated. Once the Order was obtained, all officials acted reasonably in

carrying out the Court Order. There is no evidence any other reasonably competent

official would not have acted in the same fashion. The Catch 22 Plaintiffs are trying to

create does not create liability here.

## IV. PLAINTIFFS HAVE FAILED TO ESTABLISH A VIABLE *MONELL* CLAIM WHERE THERE IS NO EVIDENCE OF A CUSTOM, PRACTICE OR POLICY VIOLATIVE OF PLAINTIFFS' CONSTITUTIONAL RIGHTS.

### A. Custom, Practice, or Policy.

A municipality is not vicariously liable for the unconstitutional acts of employees

pursuant to 42 U.S.C. §1983. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

"A city may be sued directly under §1983 where 'the action that is alleged to be

unconstitutional implements or executes a policy statement, ordinance, regulation, or

decision officially adopted and promulgated by [the city's] officers.'" *Kuha v. City of*

*Minnetonka,* 365 F. 3d 590, 604 (8th Cir. 2003) (quoting *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690 (1978)).  Municipalities cannot be held liable under §1983, "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 603 (quoting *Monell,* 436 U.S. at 691); *see also Angarita v. St. Louis County,* 981 F.2d 1537, 1547 (8th Cir. 1992) ("A municipality may be held liable under Section 1983 only if a municipal custom or policy caused the deprivation of the right protected by the constitution or federal law"); *Mettler,* 165 F.3d at 1204 ("For a municipality to be liable, a plaintiff must prove that municipal policy or custom was the 'moving force [behind] the constitutional violation'").

Additionally, "[a] [m]unicipal policy is not unconstitutional if it might allow for unconstitutional conduct in some instances, but rather, such a policy is unconstitutional only if it requires its officer to act in such an unconstitutional manner."  The absence of such a pattern of unconstitutional misconduct must end the court's inquiry.  *See Thelma D. ex rel. Delores A. v. Bd. of Ed.,* 934 F.2d 929, 933 (8th Cir. 1991); *Handle v. City of Little Rock,* 772 F.Supp. 434, 438 (E.D. Ark. 1991).

The Eighth Circuit does not use "policy" and "custom" interchangeably. *Mettler,* 165 F.3d at 1204.  "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.*  To establish the existence of a municipal custom, plaintiff must satisfy three requirements: 1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) deliberate indifference to, or tacit authorization of such conduct by the governmental entity's

policymaking officials after notice to the officials of the misconduct; and 3) th[e]

plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e. [proof] that

the custom was the moving force behind the constitutional violation. *Id.* (quoting *Ware*

*v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998)).

Plaintiffs have not alleged in their complaint "a continuing, widespread, persistent

pattern of unconstitutional misconduct . . . ." Plaintiffs have not indicated a "deliberate

indifference to or tacit authorization of such conduct by the governmental entity's policy

making officials . . . ." Plaintiffs' Complaint does not mention any specific policy

because there is none. Plaintiffs' only claim against Cook County is for violation of

ADA and MHRA. *Pls.' Compl.* ¶ 109. Mere allegations of an unconstitutional policy or

practice are not enough to establish a constitutional violation. Additionally, as argued

above, there is no valid constitutional claim for violation of the ADA. As a result,

Plaintiffs' purported claim against Cook County should be dismissed.

## V.   COOK COUNTY OFFICIALS ARE ENTITLED TO OFFICIAL IMMUNITY.

Cook County officials are entitled to official immunity for Plaintiffs' state tort

claims.[4] Official immunity protects public officials from liability for discretionary action

taken in the course of their official duties. *Anderson v. Anoka Hennepin Indep. Sch. Dist.*

*11*, 678 N.W.2d 651, 655 (Minn. 2004); *Sletten v. Ramsey County*, 675 N.W.2d 291, 299

(Minn. 2004). The Minnesota Court of Appeals has further determined, "[g]enerally,

police officers are discretionary officials." *Dokman v. County of Hennepin*, 637 N.W.2d

---

[4] In *State v Moundsview,* 518 N.W.2d 567 (Minn. 1994), the Minnesota Supreme Court
recognized official immunity could be raised as a defense to a human rights claim.

286, 296 (Minn. App. 2001) (citing *Johnson v. Morris*, 453 N.W.2d 31, 41-42 (Minn.

1990) ("police officers are classified as discretionary officers entitled to that immunity")).

 The doctrine of official immunity is so broad as to "protect all but the plainly

incompetent or those who knowingly violate the law." *Dokman,* 637 N.W.2d at 292.

"Only when officials act outside the scope of their charged authority can they be deemed

to have waived this immunity and be held personally liable for their negligence." *Id.* at

296 (see generally *Janklow v. Minn. Bd. Of Exam'rs*, 552 N.W.2d 711, 715 (Minn.

1996)).  "Official immunity is provided because the community cannot expect its police

officers to do their duty and then second-guess them when they attempt conscientiously

to do it."  *Pletan v. Gaines*, 494 N.W.2d 38, 41 (Minn. 1992).   Official immunity is

intended "to protect public officials from the fear of personal liability, which might deter

independent action and impair effective performance of their duties." *Elwood v. Rice

County*, 423 N.W.2d 671, 678 (Minn. 1988); *Janklow*, 552 N.W.2d at 715.

 Determining whether official immunity is available in a given context requires a

two-step inquiry: "(1) whether the alleged acts are discretionary or ministerial; and (2)

whether the alleged acts, even though of the type covered by official immunity, were

malicious or willful and therefore stripped of the immunity's protection." *Dokman,* 637

N.W.2d at 296 (citing *Davis v. Hennepin County*, 559 N.W.2d 117, 122 (Minn. App.

1997), *review denied* (Minn. May 20, 1997)).

 In determining whether conduct is discretionary for purposes of official immunity,

the critical determination is whether the nature of the officers' action was discretionary or

ministerial.  Whether an act is discretionary is determined by the court as a matter of law.

*Kelly v. City of Minneapolis,* 598 N.W. 2d 657, 664 (Minn. 1999). "A ministerial duty [is] one that is 'absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts.'" *Anderson*, 678 N.W.2d at 656 (quoting *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn. 1998) (citation omitted)). Generally, "police charged with the duty to prevent crime and enforce the laws are not purely 'ministerial officers,' in that many of their duties . . . (involve) the exercise of discretion." *Elwood*, 423 N.W.2d at 678.

In *James v. Wilson,* 95 S.W.3d 875 (Ky. App. 2002), parents of three girls shot and killed by a fellow student at their high school, sought to impose civil liability on school officials, the parents of the student who shot their daughters, and several classmates. Plaintiffs claimed school board members and employees were negligent in failing to implement safety measures to properly protect the student body, detect and prevent the shootings and take any action regarding the shooter's (Carneal) disciplinary problems. Plaintiffs also claimed the teachers failed to notify school officials or Carneal's parents that for class assignments Carneal was writing violent stories centered around the death of classmates and taking over the school by force. They alleged such intervention would have prevented the deaths of Carneal's victims. In finding the officials entitled to official immunity, the court stated: "No task is more fundamental to teaching or inherently discretionary than evaluating assignments and deciding whether the content is sufficiently alarming to warrant additional review by parents and/or officials." *Id.* at 909.

Similarly here, the deputy, social worker, County Attorney and Judge's actions were clearly discretionary as they evaluated David Riehm's writings and used their personal judgment in deciding to seek and approve a Court Order for emergency protection.  By definition, their actions were discretionary.

In order to avoid the application of official immunity, Plaintiffs must demonstrate the officials acted willfully and maliciously.  In defining the term "malicious," the Minnesota Supreme Court has stated there must be an element of bad faith involved. *Elwood*, 423 N.W.2d at 679.  Relying on *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Minnesota Court of Appeals has required plaintiffs to present "specific facts evidencing bad faith" rather than "bare allegations of malice."  *Reuter v. City of New Hope*, 449 N.W.2d 745, 751 (Minn. App. 1990).  The Minnesota Supreme Court has determined in the official immunity context, willful and malicious are synonymous.  "Malice means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right."  *Rico v. State,* 472 N.W. 2d 100, 107 (Minn. 1991) (citations omitted).

*See Lundak v. Nyseth,* 2001 WL 1085067 at *2 (Minn. App. 2001) (finding official immunity for entering home in response to call of suicide although Lundak stated he was not suicidal that the call was part of his wife's family's ongoing attempts to make him "look bad," respondents were justified in treating the report as reliable because it

came from an identified source who claimed to have just ended a telephone conversation with Lundak, in which Lundak indicated he "wished to commit suicide.")[5]

As a matter of law these Cook County officials acted prudently, quickly and professionally when making the discretionary decision to seek an order from the Court and subsequently enforce that Order.  Fortunately the subsequent medical evaluation determined David Riehm was not a danger to himself or others.  Undoubtedly, Colleen Riehm would be a plaintiff suing these defendants for failing to prevent a perceived threat had there been a tragic event similar to that in West Paducah, Kentucky; at Columbine High School in Littleton Colorado; in Springfield, Oregon; in Jonesboro, Arkansas; in Edinboro, Pennsylvania and (shortly after David Riehm was evaluated), in Red Lake, Minnesota.  Indeed school officials and Cook County officials acted reasonably and not maliciously in seeking a Court Order for protection.

It is assumed Plaintiffs will argue Cook County failed to investigate other students for "inappropriate writings."  However, there is no requirement Cook County officials investigate other students prior to responding to a specific call regarding David Riehm.  Cook County officials were asked to investigate the potential threats made against Ann Mershon by only David Riehm.  They acted reasonably in doing so.  Therefore, Plaintiffs' state tort claims should be dismissed as a matter of law.

---

[5] U.S. Federal District Court Judge John R. Tunheim found Nyseth's actions did not rise to a Constitutional violation and defendants were entitled to summary judgment on all federal claims. *See Lundak v. Nyseth*, No. 04-4297 (D. Minn. Sept. 15, 2005) (Memorandum Opinion and Order attached to Aff. Tindal as Exhibit. 2).

Because the individual defendants are immune from liability, the County is entitled to vicarious official immunity. Vicarious official immunity protects a governmental entity from a suit based on the acts of an employee who is entitled to official immunity. *See Wiederholt*, 581 N.W.2d at 316. The Minnesota Supreme Court concluded, "it would be anomalous" to impose liability on the government employer for the very same acts for which the employee receives immunity. *Id.* "Generally, if a public official is found to be immune from suit on a particular issue, his or her government employer will be vicariously immune from suit arising from the employee's conduct and claims against the employer are dismissed without explanation." *Anderson*, 678 N.W.2d at 663-64. Because the individual defendants are immune based on their discretionary activities, Cook County is immune from liability.

## VI.  DAVID RIEHM CANNOT PREVAIL ON A FALSE IMPRISONMENT CLAIM.

The common law tort of false imprisonment reflects the general understanding an individual may not, without legal justification, be confined against her or his will. *Gleason v. Metropolitan Council Transit Operation,* 563 N.W. 2d 309, 319 (Minn. App. 1997) (citing *Kleidon v. Gelsosk,* 10 N.W. 2d 394, 425 (Minn. 1943)). As discussed above, the officers acted pursuant to a Court Order. Therefore, there is no valid false imprisonment claim.

## VII.  NO PRIVATE CAUSE OF ACTION FOR VIOLATIONS OF THE MINNESOTA CONSTITUTION.

Plaintiffs claim violations of rights to be free from unreasonable seizure under Article I §§ 8 and 10 of the Minnesota Constitution, violation of freedom of speech under

Article I §§3 and 8 and violation of rights to familial association under Article I §§ 1, 3, 8 and 16.  However, there is no private cause of action for violation of the Minnesota Constitution.  *Guite v. Wright*, 976 F.Supp. 866, 871 (D. Minn. 1997).  The District Court has acknowledged, "the Minnesota courts have yet to recognize a civil cause of action for an unreasonable seizure."  *Goldberg v. Hennepin County*, 2004 WL 1386154 at *3 (D. Minn. June 18, 2004); *see also Luckes v. Hennepin County,* 2004 WL 1683145 at *4 (D. Minn. July 28, 2004).  The plaintiff in *Luckes* cited a number of Minnesota cases in an attempt to rebut this argument.  2004 WL 1683145 at *4.  However, as the Court in *Luckes* determined, "none [of the cases cited] demonstrates the existence of such a cause of action."  *Id.*  Judgment was found for defendants because the Court stated it "does not have the authority to recognize a new cause of action under the Minnesota Constitution." *Id.*; *see also Goldberg*, 2004 WL 1386154 at *3.  Thus, as the court in *Goldberg* determined, "even assuming [plaintiff's] allegations constitute a violation of her state constitutional rights, she cannot bring a civil claim to vindicate those rights."  2004 WL 1386154 at *3.

## VIII.  NO ABUSE OF PROCESS.

Plaintiffs' claim Diercks and DeBevec abused the legal process of Minn. Stat. § 260C.181, 260C.007 and 257A for retaliating against David Riehm for his essay.  *Pls.' Compl.* ¶ 111.

"The essential elements for a cause of action for abuse of process are the existence of an ulterior purpose and the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise

be lawfully obtained or not." *Dunham v. Roer,* 708 N.W.2d 552, 571 (Minn. App. 2006). "[T]he test is whether the process was used to accomplish an unlawful end for which it was not designed or intended, or to compel a party to do a collateral act which he is not legally required to do." *Kittler & Hedelson v. Sheehan Props., Inc.,* 203 N.W.2d 835, 840 (Minn. 1973). Mere indirect injury to a person's name or reputation is insufficient to constitute abuse of process. *Hoppe v. Klapperich,* 28 N.W.2d 780, 787 (Minn. 1947) (quotation omitted).

Minn. Stat. § 260C.007, subd. 6 (9) defines a child in need of protective services means a child "whose behavior, condition, or environment is such as to be injurious or dangerous to the child or others." David Riehm's writings clearly described conflict with a teacher and subsequently an intent to injure that teacher and himself. The teacher and principal found the writings to be a thinly veiled threat and contacted law enforcement who found the writings potentially threatening enough to include Social Services and ultimately a Judge also ordered an Order for Protection was warranted. Cook County officials were reasonable under Minn. Stat. § 260C.007 in seeking a Court Order for emergency protection. Plaintiffs have not alleged an "ulterior purpose" for Cook County officials' actions. Accordingly, Plaintiffs' abuse of process claim fails as matter of law.[6]

---

[6] Minn. Stat. § 260C.181 deals with the County's obligation to pay medical bills in protective custody settings. Cook County has paid all of David Riehm's outstanding medical bills associated with the protective hold. *See Aff. DeBevec, Ex. 1.*

## CONCLUSION

For the foregoing reasons, Cook County, Steven Diercks, Joseph Zallar and Anne DeBevec respectfully request this Court grant their joint and individual Motion to Dismiss or in the Alternative Summary Judgment, and dismiss all of Plaintiffs' claims in their entirety and with prejudice, costs and disbursements.


IVERSON REUVERS

Dated:  June 2, 2006.                    By_____
                                            Jon K. Iverson, #146389
                                            Susan M. Tindal, #330875
                                         Attorneys for Defendants Diercks,
                                         DeBevec, Zallar and Cook County
                                         9321 Ensign Avenue South
                                         Bloomington, MN  55438
                                         (952) 548-7200